**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| KAREN WILLIAMS, | : | |
| Plaintiff, | : | Case No. 1:04CV439 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| NATIONAL POSTAL MAIL<br>HANDLERS UNION, *et al.*, | : | |
| | : | |
| Defendants. | | |
| | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I. INTRODUCTION

Plaintiff Karen Williams, a former employee of the United States Postal Service, brings this case *pro se* against her former employer, the United States Postal Service (USPS), and the National Postal Mail Handlers Union and the National Postal Mail Handlers Union, Local 304 (the Union). (Doc. #3). Williams claims that the USPS terminated her employment because of her race in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended 42 U.S.C. §2000e *et seq*., and breached a Collective Bargaining Agreement in violation of 39 U.S.C. §1208(b). Williams claims that the Union failed to fairly represent her during her grievance and arbitration.

On February 9, 2005, Defendants, through counsel, deposed Williams. The record contains a transcript of her deposition. (Doc. #27).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

In September 2005 Williams filed a Motion to Compel Discovery seeking an Order requiring the USPS to supplement its discovery responses. (Doc. #26). In the absence of a opposition by the USPS, the Court ordered the USPS to either supplement its discovery responses or show cause why it should not be required to supplement its discovery responses. (Doc. 30). In response to the Order, the USPS filed a Memorandum explaining, among other things, that it fully responded to Williams' original discovery requests. (Doc. #31). The USPS attached to its Memorandum copies of its Interrogatory Responses and documents it produced to Williams. *Id*. at Exhibits 1 and 2. Williams did not respond or provide information conflicting with the USPS's Memorandum.

This case is presently before the Court the Union's Motion for Summary Judgment (Doc. #28), the USPS's Motion to Dismiss or, alternatively, Motion for Summary Judgment (Doc. #34), and the record as a whole. Upon the filing of these dispositive Motions, the Court notified Williams that she needed to respond to the Motions and informing her that in the event she failed to respond, her case may be dismissed on the merits or due to her failure to prosecute. (Doc. #s 29, 35). Williams has not opposed these Motions and has not otherwise acted in this case since filing her Motion to Compel.

II. **BACKGROUND**

    A.    **Williams' Complaint**

Williams' Complaint does not allege many facts. She states in her Complaint, "The U.S.P.S. is an employing agency of the federal government, and its Cincinnati Bulk Mail Center facility was my employer where they engaged in a policy of deliberately or recklessly denying me full and benefits [sic] of the law as enjoyed by my white co-workers and citizens." (Doc. #3

at 5). Williams claims, "The National Union and Local 304 Headquarters failed to fairly represent me in a grievance-arbitration procedure, before and thereafter, in securing my employment, loss of wages and benefits." (Doc. #3 at 5).

Williams seeks an Order granting relief including, among others, compensatory and punitive damages, restoration of employment with full benefits and lost wages, and expungement of her disciplinary record. (Doc. #3 at 6).

B.     **The USPS's Motion for Summary Judgment**

The USPS explains that it employed Williams from December 1993 through January 5, 2002. (Doc. #34 at 3). She worked as a mail handler at the USPS's Cincinnati Bulk Mail Center. *Id.*

Williams was absent from work for three-and-a-half months, from July 12, 2001 through October 25, 2001. (Doc. #34, Exh. A-1). In order to have her period of work absence excused, Williams submitted medical documentation. *Id.*

On November 26, 2001, the USPS issued a Notice of Removal to Williams based on charges of "Improper Conduct/Submitting Altered Medical Documentation" and "Absent Without Official Leave (AWOL)." *Id.* This Notice terminated Williams' employment with the USPS effective January 5, 2002. *Id.* In response, Williams, through a Union representative, filed a timely grievance concerning her Notice of Removal. (Doc. #34 at 4).

In March 2002 Williams contacted the USPS's Cincinnati District Equal Employment Opportunity ("EEO") office and requested EEO counseling concerning her removal. The EEO sent Williams a form, which she completed and returned to the EEO. This form was titled, "Information for Pre-Complaint Counseling." (Doc. #34, Exh. A at ¶5 and Exh. A-2).

3

The USPS seeks summary judgment in their favor on various grounds including: (1) Williams has failed to establish a *prima facie* case of discrimination and cannot show that the USPS's legitimate nondiscriminatory reasons for terminating her employment were a pretext for discrimination, and (2) Williams cannot support a claim that the USPS breached the CBA because Williams cannot satisfy the prerequisite to such a claim by showing that the Union breached its duty of fair representation.  Although the USPS also brings a Motion to Dismiss under Fed. R. 12(b)(6), there is no need to address this Motion because, as discussed below, *infra*, §IV, the USPS is entitled to summary judgment.

      C.     **The Union's Motion for Summary Judgment**

The Union explains that for purposes of collective bargaining, mail handlers are represented by the National Postal Mail Handlers Union.  Defendant Local 304 represents mail handlers in Ohio, Kentucky, and Indiana.  The Collective Bargaining Agreement ("CBA") between the USPS and the National Postal Mail Handlers Union contains a detailed grievance procedure.  Three preliminary grievances steps occur before final and binding arbitration.  (Doc. #28, Bell Aff., Exh. A).

The Union further explains that Williams initially presented the USPS with two medical documents in support of her claimed inability to work: one dated July 12, 2001; the other dated July 20, 2001.  In September 2001 Williams re-submitted the July 12, 2001 document with an additional notation from her physician's office indicating that she was incapacitated and that her next appointment with her physician was scheduled to occur on October 3, 2001.  Williams admitted during her deposition that she removed portions of the re-submitted note of July 12, 2001 with white-out.  (Doc. #27, Williams deposition at 35, 119-20).

4

Williams attempted to return to work on October 25, 2001.  She was informed that she would be unable to return until she passed a fit-for-duty exam.  *Id*. at 38-39.  When Williams presented herself for the exam, a nurse questioned her about the validity of her medical documents.  *Id*. at 40-42.  Consequently, she returned to her physician's office to get another note.  A noted dated October 25, 2001 indicates that Williams was seen at her physician's office on October 25, 2001, July 12, 2001, and November 20, 2000.  *Id*. at Exh. 3.  Williams acknowledges, however, that she removed language from this note with white-out.  (Doc. #27, Williams depos. at 119-20).  When Williams returned to see the USPS nurse with her new note, the nurse refused to see her.  *Id*. at 45.

Williams then underwent a pre-discipline interview with her supervisor and her Union steward.  At that time she was informed that the USPS believed she had falsified medical documents.  *Id*. at 53.  During the interview, Williams admitted that she changed certain information on the medical documents she had provided to the USPS.  *Id*., Exh. 14, ¶4.  After the pre-discipline interview, in November 2001, the USPS terminated Williams' employment.

In response to Williams' termination, her Union steward filed a timely grievance, which proceeded from steps one through three without resolution.  (Doc. #28, Bell aff., Exh. B).  As a result, the Union pursued Williams' grievance to arbitration and represented her during an arbitration hearing in September 2002.  During her arbitration hearing, Williams' Union representative presented a written description of the issues, a summary of the background facts, and a written statement of the Union's position.  The Union representative argued that Williams' termination lacked just cause and sought a remedy including, among other things, reinstatement and back pay.

The arbitrator's decision was due within thirty days of the hearing. Yet, several months passed while Williams, the Union, and the USPS waited for the arbitrator's decision. This substantial delay led the Union representative along with the USPS to send a letter to the arbitrator cancelling further hearings with this arbitrator due to his overdue arbitration decisions. Finally, in December 2003, the arbitrator issued his decision. (Doc. #127, Williams depos., Exh. 1 at 25). The arbitrator rejected Williams' contentions. The arbitrator determined that Williams had altered medical documents and that as a result, the USPS's decision to terminate her employment was not without just cause. *Id*. at 32.

The Union contends that it is entitled to summary judgment it did not breach its duty of fair representation and because its conduct with regard to Williams was not discriminatory, hostile, dishonest, arbitrary or done in bad faith.

### III.   SUMMARY JUDGMENT STANDARDS

The central issue presented by a Motion for Summary Judgment is a threshold issue - whether the case presents a proper jury question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A moving party is entitled to summary judgment in its favor if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 247.

To determine if a proper jury question is presented, the Court must evaluate the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *see Little Caesar Enterprises, Inc. v. OPPCA, LLC,* 219 F.3d 547, 551 (6th Cir. 2000). The Court's function is not

to weigh the evidence to determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 249. In doing so, the evidence must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

Because Plaintiff is proceeding *pro se*, the Court must construe her Complaint liberally in her favor. *Black v. Parke*, 4 F.3d 442 (6th Cir. 1993). The Court, however, is not required "to search the entire record establish that it is bereft of a genuine issue of material fact." *Id*. at 404; *see InterRoyal v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80. Rather, the burden falls on Plaintiff at this stage of litigation to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 250; *see Adams v. Metiva*, 31 F.3d 375, 379; *see also Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-05,

Ultimately, at the summary judgment stage, the Court determines whether the evidence presents a sufficient factual disagreement to require submission of a claim to the jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52; *see Little Caesar Enterprises*, 219 F.3d at 551.

**IV.     ANALYSIS**

**A.     The USPS's Motion For Summary Judgment**

**1.
Title VII And Intentional Discrimination**

Title VII prohibits discrimination as follows:

> It shall be unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e-2(a)(1). To survive an employer's motion for summary judgment, a Title VII plaintiff must produce affirmative evidence from a which a reasonable finder of fact could conclude that the employer intentionally discriminated against the plaintiff because of his or her race or sex or other prohibited characteristic. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Street*, 886 F.2d at 1479-80 (affirmative evidence required to defeat properly supported Motion for Summary Judgment). Such affirmative evidence may consist of either direct or circumstantial evidence of discrimination. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

In the instant case, Williams has not presented direct evidence indicating that the USPS intentionally discriminated against her based on her race or any other category of discrimination prohibited by Title VII. Consequently, Williams must present sufficient circumstantial evidence for a finder of fact to find discrimination in violation of Title VII. Such evidence is evaluated under the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McClain v. NorthWest Community Corrections Center*, 440 F.3d 320, 332 (6th Cir. 2006).

The burden-shifting analysis consists of three stages: First, Williams must establish a *prima facie* case of discrimination. Second, if she establishes a *prima facie* case, the burden then shifts to the USPS to articulate some legitimate non-discriminatory reason for its decision to terminate Williams' employment. If the USPS meets its burden of production at state two, then at stage three, Williams must demonstrate that the proffered reason was a pretext for intentional discrimination. *See McClain*, 440 F.3d at 332 (citing *McDonnell Douglas* and

*Burdine*); *see also Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997) (citations omitted). Throughout this analysis, the ultimate burden of persuasion remains at all times with Williams. *See Burdine*, 450 U.S. at 256.

## 2.
## Williams' *Prima Facie* Case Fails

To establish a *prima facie* case of intentional discrimination, Williams must produce affirmative evidence demonstrating that (1) she is a member of a statutorily protected class; (2) she suffered an adverse action; (3) she was qualified for her position; and (4) that a similarly situated non-protected employee was treated more favorably or that Williams was replaced by someone outside the protected class. *See McClain*, 440 F.3d at 332 (citing *McDonnell Douglas*, and *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)); *see Talley*, 61 F.3d at 1246.

Williams' allegations, if accepted as true, suffice to establish the first three elements of her *prima facie* case. First, Williams is an African-American woman and, consequently, she is a member of two groups protected from discrimination by Title VII. *See* 42 U.S.C. §2000e-2(a)(1). Second, it is undisputed that the USPS terminated Williams' employment thus subjecting her to the ultimate adverse employment action. Third, the USPS does not contend that Williams was not qualified for her job as a mail handler. *See* Doc. #34, Memo. at 14-15 (challenging only fourth element of Williams' *prima facie* case).

However, because Williams has not opposed the USPS's Motion for Summary Judgment, she has not presented evidence sufficient to create a genuine issue of fact regarding fourth prong of the *McDonnell-Douglas* test. Williams has not alleged that the USPS replaced her with a male or a non-African-American. She has also not presented affirmative evidence indicating that

a similarly situated non-protected employee was treated more favorably.  *See McDonnell Douglas*, 411 U.S. at 802; *see also Talley*, 61 F.3d at 1246.  To establish that a non-protected employee was similarly situated to her, Williams must point to an employee who was similarly situated to her in all relevant respects.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  In the absence of opposition by Williams to the USPS's Motion for Summary Judgment, she has not presented affirmative evidence that a non-protected employee was similarly situated to her in all relevant respects.

The USPS recognizes that the only potential evidence in the record regarding a similarly situated employee appears in Williams' Information for Pre-Complaint Counseling form.  (Doc. #34, Exh. A-2).  Williams stated in this form that the USPS treated Michelle Lamb ("white – female") differently when she falsified a medication prescription; the USPS treated Ann Keck ("white – female") differently when she falsified postal medical documents; and the USPS treated John and Jane Does differently when they falsified postal medical documents. (Doc. #34, Exh. A-2 at 1-2).  Without more information, these bare allegations fail to show that Michelle Lamb, Ann Keck, or John or Jane Doe were similarly situated to Williams in all relevant respects.  Williams presents no evidence from which it could be reasonably concluded that these employees were not terminated even though they, like Williams, submitted altered medical documents in an attempt to support their long-term absences.  Williams' conclusory allegations regarding John or Jane Does fail to constitute affirmative evidence that specific comparable employees were treated more favorable than Williams.

Accordingly, Williams has not met her burden of establishing a *prima facie* case of discrimination.  In addition, even if Williams has established a *prima facie* case of

10

discrimination, she cannot demonstrate that the USPS's reason for terminating her employment was a pretext for intentional discrimination.

### 3.
### Pretext

The USPS asserts a legitimate, nondiscriminatory reason for terminating Williams' employment – she altered certain medical documents in an attempt to support her absences and consequently her absences were without leave.  (Doc. #34 at 15).  To show that this reason is a pretext for intentional discrimination, Williams must produce affirmative or significantly probative evidence, *see Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002), that: (1) the USPS's asserted reason had no basis in fact, (2) the USPS's asserted reason did not actually motivate the employment decisions at issue, or (3) the USPS's reason was insufficient to motivate the termination of Williams' employment.  *See Manzer v. Diamond Shamrock Chemicals Co*., 29 F.3d 1078, 1084 (6th Cir. 1994).

In the absence of opposition to the USPS's Motion for Summary Judgment, Williams has not pointed to evidence of pretext or offered any argument demonstrating that the USPS's reason for terminating her employment constituted a pretext for intentional discrimination.  Williams has therefore failed to meet her burden at this stage of the case to show the existence of a genuine issue of material fact regarding pretext.

### 4.
### Conclusions

Williams has not met her burden to show a *prima facie* case of intentional race or sex discrimination, or that the USPS's legitimate non-discriminatory reason for terminating

11

Williams' employment was a pretext for intentional race or sex discrimination. Consequently, the USPS is entitled to summary judgment in its favor on Williams' Title VII claims.

### B.  The Union's Motion for Summary Judgment

In response to Williams claim that the Union failed to fairly represent her, the Union argues that it represented Williams to the best of its ability given the facts. The Union also contends that the record lacks a genuine dispute over the facts that (1) the Union did not act in hostile, discriminatory, dishonest, or arbitrary manner towards Williams or her case; (2) the Union did not act in bad faith; and (3) the grievance and arbitration process was not flawed due to any breach of duty by the Union.

A union does not breach its duty to fairly represent its members unless its actions are "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). In the absence of opposition by Williams to the Union's Motion for Summary Judgment, there is no genuine issue over the fact that the Union fairly represented Williams during each step of the grievance procedure and during her arbitration. There is also no genuine dispute over the fact that the Union did not act in an arbitrary or discriminatory manner, or in bad faith. Without opposition by Williams, the affidavits and Exhibits attached to the Union's Motion for Summary Judgment and by Williams' deposition testimony demonstrate the following: The Union filed a timely grievance on Williams' behalf. The Union represented Williams through each step of the grievance procedure and appealed her grievance to arbitration. During her arbitration, the Union, through William McLemore, represented Williams. Prior to arbitration, McLemore met with Williams and learned the factual background of her termination; he identified witnesses and called them to testify during the arbitration; he presented the arbitrator with a written description

of the issues, a summary of the background facts, and a written description of the Union's position regarding Williams' termination, particularly arguing that her termination was not based on just cause and that she was entitled to reinstatement, expungement of her disciplinary record, and back pay including lost overtime pay.  The Union also vigorously represented Williams' interests when it, along with the USPS, took the unusual step of sending a letter to the arbitrator in March 2003 seeking to expedite the arbitrator's delay.  Although this was fruitless, the Union's effort in doing so tends to show its zeal in representing Williams' best interests.

In addition, Williams acknowledged during her deposition that the Union represented her during her grievance procedures and arbitration (Doc. #27, Williams depos. at 56-57); that the Union sought relief for Williams in an attempt to make her whole, including compensation for all her lost back pay and lost overtime pay, and expungement of her disciplinary record, *id*. at 56; that McLemore or other Union officials who represented her did not act in an hostile towards her and that McLemore in particular did everything she expected of him during the arbitration, *id*. at 58, 71, 115; that her claims of discrimination were against the USPS, *id*. at 145-46; that she was "not saying that Mr. McLemore did not do his job," *id*. at 58, 115; that McLemore attempted to present evidence regarding Williams' request for FMLA leave but, in Williams' words, it was "shot down," *id*. at 59, 109-112.  Although the Union's advocacy on Williams' behalf was unsuccessful, this does not transform the Union's vigorous representation into a breach of the Union's duty to fairly represent her.  In the absence of affirmative evidence showing some arbitrary, discriminatory, or bad faith conduct by the Union, her broad allegation that the Union breached failed to fairly represent is insufficient to create a genuine issue of material fact.

Lastly, construing Williams' Complaint liberally in her favor may also reveal her claim that the USPS terminated her employment contrary to the terms of the applicable CBA in violation of 39 U.S.C. §1208(b).  Such a claim, however, must be supported by a prerequisite showing that the Union breach its duty to fairly represent Williams.  *See Sparks v. International Union*, 980 F.2d 394, 398 (6th Cir. 1992)(citing *United Parcel Service v. Mitchell*, 451 U.S. 56, 62 (1981).  Because Williams has not shown the presence of a genuine issue of material fact in support of her claim that the Union breach its duty to fairly represent her, a claim she seeks to raise against the USPS under 39 U.S.C. §1208(b) likewise fails.  *See id*.

Accordingly, the Union's is entitled to summary judgment on Williams' claim that it breached its duty of fair representation and the USPS is entitled to summary judgment on Williams' claim under 39 U.S.C. §1208(b).

## IT IS THEREFORE RECOMMENDED THAT:

1. The Union's Motion for Summary Judgment (Doc. #28) be GRANTED;

2. The USPS's alternative Motion for Summary Judgment (Doc. #34) be GRANTED and its Motion to Dismiss (Doc. #34) be DENIED as moot;

3. Williams' Complaint be DISMISSED with prejudice; and

4. The case be terminated on the docket of this Court.


May 3, 2006

                s/ Sharon L. Ovington
                Sharon L. Ovington
               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).